**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

ASHLEY PROVINO,

      Plaintiff,

v.

MUSTER, INC., d/b/a BIG LEAGUE HAIRCUTS, a Colorado Corporation, and
KYLE REED, individually and as Owner/President of Muster, Inc.,

      Defendants.

---

### COMPLAINT AND JURY DEMAND

---

      Plaintiff, Ashley Provino, by and through her attorneys, Paula Greisen and Kimberly J. Jones of KING & GREISEN, LLP, in cooperation with Rebecca T. Wallace and Mark Silverstein of THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO and Lenora M. Lapidus and Galen Sherwin of THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION WOMEN'S RIGHTS PROJECT, submits her Complaint and Jury Demand against Defendants Muster, Inc., d/b/a Big League Haircuts ("BLH") and Kyle Reed, as follows:

## I. INTRODUCTION

      1.    This case involves one of the most basic rights of a working mother: the right to feed her child and parent according to her own values, without suffering retribution on the job. Defendants discriminated against Plaintiff, Ashley Provino, because of her sex, and retaliated against her after she asserted her rights under state and federal law to be allowed short breaks to express (or "pump") her breast milk for her newborn.

2.      When Ashley Provino requested permission from BLH President and Owner, Defendant Kyle Reed, to take a short break from her job as a hairstylist every four (4) hours to express breast milk in a private location upon her return to work from maternity leave, Reed adamantly refused, and instead cut Ms. Provino's hours dramatically so that she was not scheduled to work any shift lasting more than four (4) hours.  When Ms. Provino continued to request permission to pump breast milk, expressing her desire to work full-time hours, as she had done before having her child, Reed fired her.

3.      Defendants' conduct in denying Ms. Provino's request for breaks and a private location to express breast milk during her workday, and their ultimate termination of her employment because of her request, violates the federal Break Time for Nursing Mothers Provision of the Fair Labor Standards Act, as amended by the Patient Protection and Affordable Care Act, 29 U.S.C. § 207(r),  ("the ACA Nursing Mothers Provision") and Colorado's Workplace Accommodations for Nursing Mothers Act, C.R.S. §§ 8-13.5-101, *et seq.* ("WANMA") in letter and spirit.  These laws were enacted to ensure that nursing mothers returning to the workforce are provided an opportunity to express breast milk in a private location in recognition of the strong public policy favoring breastfeeding, both for its medical benefits to mother and child as well as to encourage removal of boundaries placed on nursing mothers in the workplace.

4.      Defendants' treatment of Ms. Provino also constitutes sex and pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Colorado Anti Discrimination Act, C.R.S. §§ 24-34-301, *et seq.* ("CADA"), as well as state tort laws.

## II.  JURISDICTION AND VENUE

5.      This action arises under the Constitution and laws of the United States and the

State of Colorado.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and

1343.  This action is authorized and instituted pursuant to the Fair Labor Standards Act, as

amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII").  This Court has supplemental jurisdiction

over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the

employment practices alleged herein to be unlawful occurred in the State of Colorado, and all of

the parties were residents of the State at the time of the events giving rise to this litigation.

8.      All procedural prerequisites for filing this suit have been met.  Plaintiff timely

filed a Charge of Discrimination alleging discrimination and retaliation against BLH with the

Colorado Civil Rights Commission ("CCRD") and the Equal Employment Opportunity

Commission ("EEOC"), and has requested her Right to Sue letter, which will be issued

forthwith.  This Complaint and Jury Demand is being filed within 90 days of Plaintiff's receipt of

the Right to Sue letter.  Plaintiff also requested nonbinding mediation with Defendants prior to

implementation of these proceedings, and Defendants refused (but have engaged in limited

settlement negotiations).  Thus, under 42 U.S.C. § 2000e-5(f)(1) and C.R.S. § 8-13.5-104, she

has satisfied all procedural prerequisites for filing suit.

### III.  PARTIES

9.      Plaintiff is and was a Colorado resident at all relevant times, including during the time of the events described in this Complaint.

10.     At all relevant times, Plaintiff was a nonexempt "employee" within the meaning of the FLSA and an "employee" as defined by Title VII, CADA, and WANMA.

11.     Defendant Muster, Inc., d/b/a Big League Haircuts, is and has been incorporated in, licensed to and doing business in the State of Colorado during all relevant time periods.

12.     Defendant is and has been an "employer" and "engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, and an "employer" as defined by CADA, and WANMA.  Upon information and belief, Defendant employed 15 or more employees during some or all of the relevant time periods, and therefore is and has been an "employer" as defined by Title VII during all of the relevant time periods.

13.     Defendant Kyle Reed is and was President and Owner of Defendant BLH, and is and has been a Colorado resident during all relevant times, including during the time of the events described in this Complaint.

### IV.  FACTUAL ALLEGATIONS

14.     Ms. Provino was hired as a hairstylist for Defendants on or about May 15, 2010.

15.     Between May 15, 2010 and approximately December 2010, Ms. Provino worked in an "on-call" capacity, and was scheduled to work on an as-needed basis.

16.     In January 2011, Defendants opened a second location in Grand Junction, Colorado, which created additional staffing needs.

17.    At that time, Ms. Provino began working full-time hours at Defendants' second location.

18.    Throughout her employment, Ms. Provino consistently received high praise from her supervisor, Defendant Kyle Reed, and was regarded by him as one of his most valued and trusted stylists.

19.    Because she was such a trusted and good employee, Reed frequently gave Ms. Provino the keys to the second BLH location so that she could open and close the shop for the day on her own.

20.    Ms. Provino built a solid base of regular customers after transitioning into a full time stylist position at the second location.

21.    Ms. Provino became pregnant with her first child in September 2011.

22.    Upon information and belief, Ms. Provino was the first BLH employee to become pregnant.

23.    She continued to work full time hours – between 40 to 45 hours per week – through her 30th week of pregnancy.

24.    After that time, Ms. Provino requested that her schedule be reduced because she was experiencing complications with her pregnancy, and her doctor had advised against full time work.  Ms. Provino provided Defendants with a doctor's note to this effect.

25.    Defendant Reed initially ignored Ms. Provino's request for a modified schedule. After approximately two weeks with no response to her request, Ms. Provino reminded Defendant Reed of her request for a reduced schedule.  Defendant Reed finally agreed to reduce her hours at that time.

26.     Ms. Provino continued working on a reduced schedule until June 2012, when she gave birth to her son.  At that time, Ms. Provino went on maternity leave.

27.     When she went out on maternity leave, Defendant Reed promised her that she would have a place at BLH when she was ready to return to work after her leave.

28.     Ms. Provino intended to breastfeed her baby. She initiated breastfeeding following the baby's birth, and continued doing so during her maternity leave.

29.     A broad consensus exists among medical and public health experts that breastfeeding is optimal for infants a year (or longer) following birth, and that it has broader developmental, psychological, social, economic and environmental benefits.

30.     In line with this medical consensus, Ms. Provino was committed to feeding her newborn child breast milk, and not formula, during the first year of her life, even after Ms. Provino returned to her job.

31.     Breastfeeding women who cannot be with their infants at all times need to use a breast pump to express milk on roughly the same schedule as the child's feeding schedule so that there is a supply of milk on hand for the baby when the mother is not present to breastfeed. Pumping is also required in order for a mother to maintain her supply and production of breast milk, and to relieve the sometimes painful physical pressure as her breasts produce milk throughout the day.

32.     While the schedule will vary from woman to woman based on a host of factors, a new mother will typically need to pump breast milk every two to three hours for the first year of the baby's life.

33.     If a woman does not breastfeed or pump on this schedule, it will cause discomfort, pain, engorgement, a risk of developing blocked milk ducts and infection, and, ultimately, cessation of lactation.

34.     Ms. Provino initially experienced considerable pain and difficulty when breastfeeding her son.

35.     Because it was very important to her to breastfeed her child for the first year of his life, both because of the known health benefits to her son of providing him with breast milk and because of the importance of breastfeeding to the mother/child emotional bond, Ms. Provino worked very hard for several months to overcome her breastfeeding challenges.

36.     Knowing that a mother's supply of breast milk decreases if a nursing mother does not continue to breastfeed or pump breast milk at frequent intervals throughout the day, Ms. Provino wanted to continue to pump breast milk when she returned to work in order to maintain a sufficient supply.

37.     In addition, pumping breast milk at these frequent intervals was necessary to relieve painful pressure that she would experience as her breasts produce milk throughout the day.

38.     Based on her experience breastfeeding her son during the first several months of his life, Ms. Provino knew that when she returned to work, she would need to express milk at least once every four hours in order to maintain a sufficient supply of breast milk for her son and to avoid engorgement.

39.     In approximately August 2012, Ms. Provino had a telephone conversation with Defendant Reed during which she told him that she could return to work on a full time basis provided that she was permitted short breaks every four hours to pump breast milk.

40.     Defendant Reed abruptly ended the conversation after Ms. Provino raised the issue of pumping breast milk.

41.     The next month, in approximately September 2012, Ms. Provino contacted Defendant Reed's wife, Elaine Reed, who also worked for Defendant BLH and who had historically assisted Defendant Reed with management decisions.

42.     The two exchanged text messages in which Elaine Reed assured Ms. Provino that she could extend her maternity leave until December to deal with her ongoing pregnancy-induced health complications.

43.     Elaine Reed also stated in her text message to Ms. Provino that Defendant Reed was uncomfortable discussing Ms. Provino's pregnancy-related difficulties, including issues related to Ms. Provino's decision to breastfeed her baby.

44.     Upon information and belief, Defendant Reed stated on at least one occasion that he believed that breastfeeding was "gross."

45.     With Defendants' approval, Ms. Provino remained on maternity leave until December 2012.

46.     On December 3, 2012, Ms. Provino met with Defendant Reed at one of Defendant BLH's locations to discuss details regarding her return to work from maternity leave.

47.     During their conversation, Ms. Provino again informed Defendant Reed that she would be able to resume a full-time schedule provided that she could pump breast milk in the back room every four hours while at work.

48.     Defendant Reed asked Ms. Provino what pumping breast milk at work would entail, asking how much time was required and whether Ms. Provino became "dizzy" or "nauseous" after doing so.

49.     Ms. Provino explained that pumping breast milk required approximately 15-20 minutes of time and that there were no side effects.

50.     Defendant Reed stated that he was "not okay" with Ms. Provino pumping breast milk at work.  Ms. Provino responded that, if she were not permitted to pump breast milk at work, she would only be available for four hour shifts.

51.     Defendant Reed responded that scheduling part-time shifts would be difficult to do on Saturdays, which were typically the busiest days in the salon.  When Ms. Provino reminded Defendant Reed that she was available for full-time work and full shifts provided only that she were permitted to pump breast milk every four hours, Defendant Reed reiterated that he was uncomfortable with that accommodation.

52.     Defendant Reed then made a notation in his notebook that Ms. Provino was "physically unable" to work full time.  When Ms. Provino saw what he had written, she told Defendant Reed that she was in no way physically unable to work a full shift.  Defendant Reed did not change his notation.

53.     Providing Plaintiff with reasonable break time to express breast milk would not have caused Defendants undue hardship, particularly because Defendants routinely granted other employees occasional breaks to smoke cigarettes or take care of other personal needs.

54.     Although she had been making arrangements for full-time daycare coverage leading up to her expected full-time return to work, after meeting with Defendant Reed on December 3, 2012 and learning that he would not permit her to work full-time hours because she needed to pump breast milk every four hours, Ms. Provino was forced to search for alternative, less costly child care arrangements.

55.     Ms. Provino's alternative child care arrangements were less reliable than full-time daycare would have been.

56.     Ms. Provino returned to work on December 15, 2012 at Defendants' original location.  Defendant Reed only scheduled her for four hour shifts.

57.     After she returned to work, Defendant Reed continued to suggest to Ms. Provino that she return to a full-time schedule.  Each time he did so, Ms. Provino reminded Defendant Reed that she wanted to work full-time and would be able to do so as long as she was permitted to take a short break every four hours to pump breast milk.  Defendant Reed dropped the subject each time Ms. Provino raised the topic of expressing breast milk.

58.     Ms. Provino asked Defendant Reed on January 2, 2013 if she could cover additional shifts, and told him to let her know if he had any additional hours for her.  He did not schedule Ms. Provino for additional shifts as she had requested.

59.     Defendants had staffing needs at that time, as evidenced by Defendant Reed's later hiring of two new employees.

60.     Ms. Provino again requested to work additional hours on February 2, 2013. During that conversation with Defendant Reed, Ms. Provino reiterated that she wanted to work full-time and that she could do so if Defendants would allow her to pump breast milk every four hours.

61.     Defendants refused to permit Ms. Provino to pump breast milk, and continued to refuse to schedule her for additional hours.

62.     During her employment, Ms. Provino had a good attendance record and rarely called in sick.

63.     However, on Saturday, February 9, 2013, Ms. Provino was extremely ill with the stomach flu.  She was unable to report to work for her shift that day, and was so ill that she had to ask her mother to pick up her son and care for him that day. She sent Defendant Reed a text at around 7:00 a.m. on February 9, 2013 to notify him that she was too sick to report to work. Defendant Reed eventually confirmed that he had received Ms. Provino's text message but said nothing more regarding the incident at that time.

64.     On the few prior occasions during her employment when she had been too ill to report to work, Ms. Provino had followed standard procedure of calling or texting Defendant Reed to notify him that she was not able to report to work. She had never been required to find a replacement to cover for her on these prior occasions, and had never been disciplined for failing to find a replacement to cover for her.

65.     Ms. Provino did not have contact information for many of her co-workers to try to find a replacement.

66.     Defendant Reed routinely handled securing replacement coverage for other employees when they called in sick.

67.     Although Ms. Provino had offered to provide Defendant Reed with doctor's notes for prior absences, he would refuse to take them saying they were unnecessary.

68.     The next day, February 10, 2013, Ms. Provino called Defendant Reed to ask for her schedule for the upcoming week.  During the call, Defendant Reed asked Ms. Provino if she had gone to the doctor.  Ms. Provino said that she had not gone to the doctor.

69.     Defendant Reed then told Ms. Provino that their arrangement was no longer working out for him, stating words to the effect that "work was not [her] main priority" and she "had limited availability."

70.     Ms. Provino reminded Defendant Reed that if she were allowed a short break to pump breast milk every four hours, she could work full-time, and she reminded Defendant Reed that she had been a consistently good and reliable employee.

71.     Defendant Reed simply reiterated that the arrangement was not working out for him, and terminated Ms. Provino's employment.

72.     Upon information and belief, Defendants terminated at least one other female employee soon after she informed Defendant Reed that she was pregnant and indicated her desire to express breast milk during the workday after returning from maternity leave.

## V.  LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### Retaliation in Violation of the FLSA, 29 U.S.C. §§ 201, *et seq*.
### (Against Defendant BLH)

73.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

74.     In recognition of the strong medical and public health consensus on the health benefits of breastfeeding, as well as the barriers many women face in continuing breastfeeding upon returning to work, in 2010 Congress enacted a provision entitled "Reasonable Break Time for Nursing Mothers," as part of the Patient Protection and Affordable Care Act.

75.     At all relevant time periods, Plaintiff was entitled to reasonable break time to express breast milk in a private place other than a bathroom pursuant to the Break Time for Nursing Mothers Provision of the FLSA, codified at 29 U.S.C. § 207(r).

76.     Plaintiff engaged in protected activity within the meaning of the FLSA's Break Time for Nursing Mothers Provision when she took action to effectuate her rights under it by requesting permission on multiple occasions to express breast milk every four hours in the back room at Defendants' salon.

77.     Defendants were on notice of Plaintiff's requests for reasonable break time to express breast milk because her requests were made to Defendant BLH's President, Defendant Kyle Reed.

78.     Defendants retaliated against Plaintiff for having requested reasonable break time to express breast milk when Defendant Reed cut her hours to part-time and subsequently terminated her employment because of her requests.

79.     Defendants' retaliatory actions were taken by Defendant Reed, who had actual knowledge of Plaintiff's protected activity.

80.     Defendants' actions constituted adverse actions within the meaning of 29 U.S.C. § 215(a)(3) because cutting Plaintiff's hours and terminating her employment would have dissuaded a reasonable person in Plaintiff's circumstances from taking action to effectuate her right to break time to express breast milk.

81.     A causal connection exists between Plaintiff's protected activity and the adverse employment action, evidenced, in part, by the very close temporal proximity between Plaintiff's request for permission for reasonable break time to pump breast milk and Defendants' slashing her hours and termination of her employment just two months after she returned to work from maternity leave.

82.     As a result of Defendants' retaliation against her, Plaintiff has suffered significant damages, including but not limited to physical harm by way of depletion of her breast milk supply, mental anguish, emotional distress, and economic losses.

## SECOND CLAIM FOR RELIEF
### Failure to Accommodate in Violation of WANMA, C.R.S. §§ 8-13.5-101, *et seq*.
### (Against Defendant BLH)

83.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

84.     The right of working mothers to breastfeed their newborn babies is of such paramount importance that the Colorado General Assembly enacted the Workplace Accommodations for Nursing Mothers Act to ensure that nursing mothers have the opportunity to express milk at work in a private location.

85.     The Colorado general assembly promulgated the Workplace Accommodations for

Nursing Mothers Act in recognition of the medical importance of breastfeeding, and to

encourage removal of boundaries placed on nursing mothers in the workplace. See C.R.S. § 8-

13.5-102(2).

86.     The Workplace Accommodations for Nursing Mothers Act provides, in pertinent

part, that:

(1) An employer shall provide reasonable unpaid break time or permit an employee to use

paid break time, meal time, or both, each day to allow the employee to express breast milk for

her nursing child for up to two years after the child's birth.

(2) The employer shall make reasonable efforts to provide a room or other location in

close proximity to the work area, other than a toilet stall, where an employee can express breast

milk in privacy.

C.R.S. § 8-13.5-104 (1) and (2).

87.     At all relevant time periods, Plaintiff was entitled to reasonable break time to

express breast milk and a private location other than a toilet stall in which to do so for up to two

years after her return to work at BLH from maternity leave.

88.     Plaintiff attempted to exercise that right by requesting that Defendants permit her

short breaks every four hours to express breast milk following her return to work at BLH from

maternity leave.  Plaintiff made that request to Defendant BLH's President, Defendant Kyle

Reed, on multiple occasions between August 2012 and February 2013.

89.     Defendants failed to engage in reasonable efforts to provide the requested accommodation to Plaintiff, and refused to permit Plaintiff any opportunity or location to pump breast milk at all following her return to work after the birth of her child.

90.     Plaintiff requested nonbinding mediation with Defendants prior to institution of these proceedings pursuant to WANMA's mediation requirement.  Defendants refused to participate in nonbinding mediation despite Plaintiff's request, but did engage in limited settlement discussions.

91.     As a result of Defendants' failure to accommodate Plaintiff by engaging in reasonable efforts to permit her an opportunity and location to pump breast milk in the workplace, Plaintiff has suffered significant damages, including but not limited to physical harm by way of depletion of her breast milk supply, mental anguish, emotional distress, and economic losses.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of WANMA, C.R.S. §§ 8-13.5-101, *et seq*.
### (Against Defendant BLH)

92.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

93.     As described herein, Plaintiff repeatedly asserted her rights under WANMA by requesting that Defendants permit her short breaks every four hours to express breast milk following her return to work at BLH from maternity leave.  Plaintiff made that request to Defendants' President, Defendant Kyle Reed, on multiple occasions between August 2012 and February 2013.

94.     Defendants retaliated against Plaintiff for attempting to exercise her right to reasonable break time to express breast milk by cutting her hours to part time, scheduling her to work only four hour shifts, and ultimately terminating her employment when Plaintiff continued to insist on Defendants' provision of break time so that she could pump breast milk.

95.     Defendant BLH's President, Defendant Kyle Reed, described breastfeeding as "gross" and told Plaintiff that he was "not okay" with her pumping breast milk in the workplace, and when Plaintiff continued to request permission to do so, Defendant Reed fired her, telling her that the arrangement was not "working out" and that he did not believe work was her main priority any more.

96.     Defendants' refusal to schedule Plaintiff for full time hours and its subsequent termination of her employment occurred in close temporal proximity to and because of her attempts to exercise her right to reasonable break time to pump breast milk.

97.     As a result of Defendants' retaliation against her for attempting to exercise her rights under WANMA, Plaintiff has suffered significant damages, including but not limited to physical harm by way of depletion of her breast milk supply, mental anguish, emotional distress, and economic losses.

## FOURTH CLAIM FOR RELIEF
## Wrongful Discharge in Violation of Public Policy
## (Against Defendant BLH)

98.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

99.     The WANMA was enacted expressly with the purpose to involve the State of Colorado in the "national movement to recognize the medical importance of breastfeeding,

within the scope of complete pediatric care, and to encourage removal of boundaries placed on

nursing mothers in the workplace."  C.R.S. § 8-13.5-102(2).

100.    The Colorado legislature declared that, "extensive research indicates that there are

diverse and compelling advantages to nursing for infants, mothers, families, businesses, and

society, including less illness among children who are nursed and lower health care costs."

C.R.S. § 8-13.5-102(1)(b).

101.    The legislature further declared that breastfeeding "results in substantial benefits

to employers, including…reduced employee absenteeism for care attributable to infant illness,

improved employee productivity, higher morale…and a family-friendly image in the

community." C.R.S. § 8-13.5-102(2)(e).

102.    Support for and the promotion of breastfeeding is likewise a strong public policy

nationally, as evidenced by Title VII's prohibition on discrimination based on pregnancy,

childbirth, and related medical conditions, and the FLSA's recent amendment to require

employers to provide reasonable break time for nursing mothers for up to one year after her

child's birth, among many other sources of United States public policy.

103.    Plaintiff believed in good faith that she had a right to express breast milk at work

and to request reasonable break time in which to do so pursuant to Colorado and federal law.

104.    Defendants knew or reasonably should have known that Plaintiff's requests for

reasonable break time to express breast milk were made because of her good faith belief that she

had a lawful right to do so.

105.    Defendants dramatically reduced Plaintiff's hours and ultimately terminated her

employment because she attempted to exercise her right to express breast milk at work by

requesting reasonable break time and a private location to do so, contrary to the clearly expressed public policy of the State of Colorado and the United States.

106.     Defendants' conduct was willful and wanton and attended by circumstances of malice and a reckless disregard for Plaintiff's rights.

107.     As a direct result of Defendants' actions, Plaintiff has suffered significant damages, injuries, and losses.

### FIFTH CLAIM FOR RELIEF
### Sex Discrimination in Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*
### (Against Defendant BLH)

108.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

109.     Plaintiff is a female and during the relevant time period was lactating, which is a condition related to pregnancy or childbirth. She  is therefore a member of the class of persons protected from discrimination on the basis of her sex under Title VII.

110.     Lactation, like pregnancy, is a sex-linked condition, or a condition that is unique to women.  Only women naturally lactate, and only women naturally experience the need to express breast milk.

111.     The need to express breast milk is a medical condition related to pregnancy and childbirth in that it arises naturally following childbirth.  In addition the provision of medical treatment and advice concerning breastfeeding and lactation is a part of the standard of care for routine post-partum medical care.

112.     The need for an accommodation in the form of reasonable breaks to express breast milk at work is a need exclusive to women.

113.    At all relevant times, Plaintiff performed her job duties at least satisfactorily and was qualified for her position at BLH.

114.    Defendants cut Plaintiff's hours in half and ultimately terminated Plaintiff's employment in whole or in part because of her sex, and because of a sex-linked medical condition (lactation) that is related to pregnancy and childbirth.

115.    Defendants also terminated Plaintiff on the basis of sex stereotypes about women and motherhood, specifically the stereotype that work was not or should not be the "main priority" of the Plaintiff because she was a new mother.

116.    Plaintiff's sex was a motivating factor in the above-described adverse actions Defendants took against her.

117.    Defendant BLH is liable for the acts and omissions of its agents and employees. Defendants, either directly or by and through their agents, discriminated against Plaintiff on the basis of her sex.

118.    Defendants' conduct was the proximate cause of Plaintiff's injuries, damages, and losses

119.    Defendants' conduct was engaged in with malice or with reckless indifference to the federally-protected rights of Plaintiff within the meaning of Title VII.

120.    As a direct result of Defendants' conduct, Plaintiff has suffered significant damages, injuries, and losses.

**SIXTH CLAIM FOR RELIEF**
**Retaliation in Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq*.**
**(Against Defendant BLH)**

121.    Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

122.    Plaintiff engaged in protected activity within the meaning of Title VII when she asserted her right as a woman to reasonable break time to express breast milk at work, and when she objected to Defendants' refusal to do so and its treatment of her as a woman by continuing to insist that Defendants provide her with such break time.

123.    Plaintiff had a good faith belief that her right as a woman to express breast milk at work, and to assert that right, were protected under Colorado and federal antidiscrimination law.

124.    Defendants willfully retaliated against Plaintiff by cutting her hours in half and ultimately terminating her employment for having engaged in such protected activity.

125.    Defendant BLH is liable for the acts and omissions of its agents and employees, including Defendant Reed.  Defendants, either directly or by and through their agents, retaliated against Plaintiff and caused her significant damages, injuries and losses.

126.    Defendants' conduct was engaged in with malice or with reckless indifference to the federally-protected rights of Plaintiff within the meaning of Title VII.

**SEVENTH CLAIM FOR RELIEF**
**Sex Discrimination in Violation of CADA, C.R.S. §§ 24-34-301, *et seq*.**
**(Against All Defendants)**

127.    Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

128.     Plaintiff is a female and during the relevant time period was lactating.  She is therefore a member of the class of persons protected from discrimination by an employer because of her sex within the meaning of CADA.

129.     Lactation, like pregnancy, is a sex-linked condition, or a condition that is unique to women.  Only women naturally lactate, and only women naturally experience the need to express breast milk.

130.     The need to express breast milk arises naturally following pregnancy and childbirth.

131.     The need for an accommodation in the form of reasonable breaks to express breast milk at work is a need exclusive to women.

132.     At all relevant times, Plaintiff performed her job duties at least satisfactorily and was qualified for her position at BLH.

133.     Defendants cut Plaintiff's hours in half and ultimately terminated Plaintiff's employment in whole or in part because of her sex, and because of a sex-linked medical condition (lactation) that is related to pregnancy and childbirth.

134.     Plaintiff's sex was a motivating factor in the above-described adverse actions Defendants took against her.

135.     Defendant BLH is liable for the acts and omissions of its agents and employees. Defendants, either directly or by and through its agents, discriminated against Plaintiff on the basis of her sex.

136.     Defendants' conduct was the proximate cause of Plaintiff's injuries, damages, and losses

137.     Defendants' conduct was engaged in with malice or with reckless indifference to the federally-protected rights of Plaintiff within the meaning of CADA.

138.     As a direct result of Defendants' conduct, Plaintiff has suffered significant damages, injuries, and losses.

### EIGHTH CLAIM FOR RELIEF
### Retaliation in Violation of CADA, C.R.S. §§ 24-34-301, *et seq.*
### (Against All Defendants)

139.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

140.     Plaintiff engaged in protected activity within the meaning of CADA when she asserted her right as a woman to reasonable break time to express breast milk at work, and when she objected to Defendants' refusal to do so and its treatment of her as a woman by continuing to insist that Defendants provide her with such break time.

141.     Plaintiff had a good faith belief that her right as a woman to express breast milk at work, and to assert that right, were protected under Colorado and federal antidiscrimination law.

142.     Defendants willfully retaliated against Plaintiff by cutting her hours in half and ultimately terminating her employment for having engaged in such protected activity.

143.     Defendant BLH is liable for the acts and omissions of its agents and employees, including Defendant Reed.  Defendants, either directly or by and through its agents, retaliated against Plaintiff and caused her significant damages, injuries and losses.

144.     Defendants' conduct was engaged in with malice or with reckless indifference to the federally-protected rights of Plaintiff within the meaning of CADA.

**NINTH CLAIM FOR RELIEF**
**Tortious Interference with Contractual Relationship**
**(Against Defendant Reed)**

145.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

146.     Plaintiff had a contract of employment with Defendant BLH.

147.     Defendant Reed knew of Plaintiff's employment contract with Defendant BLH.

148.     Defendant Reed by words and conduct intentionally interfered with Plaintiff's contractual relationship with Defendant BLH.

149.     Defendant Reed used wrongful means and was motivated solely by a desire to induce Defendant BLH to breach its contract with Plaintiff or to interfere in the contractual relationship between Defendant BLH and Plaintiff; and

150.     Defendant Reed's interference with Plaintiff's contractual relationship with Defendant BLH caused and continues to cause Plaintiff damages.

**TENTH CLAIM FOR RELIEF**
**Outrageous Conduct**
**(Against Defendant Reed)**

151.     Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

152.     Defendant Reed's actions as described herein, including but not limited to his refusal to provide Plaintiff with any accommodation whatsoever that would allow her to both work full time and continue to breast feed her child and its termination of Plaintiff's employment when she continued to request permission to express breast milk at work, were outrageous,

intolerable and so extremely egregious as to exceed all possible bounds of decency and are regarded as atrocious and intolerable in a civilized community.

153.    Defendant Reed's actions as described herein were engaged in intentionally or recklessly with the intent of causing Plaintiff severe emotional distress.

154.    Defendant Reed's actions as described herein did cause Plaintiff to and will continue to cause Plaintiff to suffer severe emotional distress and other significant injuries, damages, and losses.

## VI.  RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law and equity, including, but not limited to the following:

a.   Appropriate equitable relief, including but not limited to declaratory and injunctive remedies, including:

    1.   Implementation of policy changes to protect the rights of nursing mothers at BLH, including:

        i.   Provision of explicit notice to employees regarding their rights under the FLSA's Break Time for Nursing Mothers provision and WANMA;

        ii.   Establishment of a private area at both of BLH's locations where nursing mothers can express breast milk free from intrusion by others;

        iii.   Comprehensive training for all of Defendants' current employees designed to educate them about nursing mothers' rights to express

> breast milk in the workplace, and provision of such training to newly
>
> hired employees within thirty (30) days after hire; and
>
> 2.  Characterization of Ms. Provino's separation from employment with BLH as a
>     resignation;

b.  Actual economic damages, in amounts to be determined at trial;

c.  Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d.  Punitive damages, as allowed by law, in amounts to be determined at trial;

e.  Pre-judgment and post-judgment interest at the highest lawful rate; and

f.  Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

g.  Any such further relief as justice requires or the law allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 1st day of December 2014.

Respectfully submitted,

KING & GREISEN, LLP

*s/ Paula Greisen*
_____
Paula Greisen
Kimberly J. Jones
King & Greisen, LLP
1670 York St.
Denver, Colorado 80206
(303) 298-9878 (p)
(303) 298-9879 (f)
greisen@kinggreisen.com

jones@kinggreisen.com

*In Cooperation with The American Civil Liberties Union of Colorado*

Rebecca T. Wallace
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
(720) 402-3104 (p)
(303) 777-1773 (f)
rtwallace@aclu-co.org

Lenora M. Lapidus
Galen Sherwin
THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION WOMEN'S RIGHTS PROJECT
125 Broad Street
New York, New York 10004
(212) 519-7819 (p)
(212) 549-2580 (f)
llapidus@aclu.org
gsherwin@aclu.org

*Attorneys for Plaintiff*

**Plaintiff's Address:**
Ashley Provino
1403 Q. Road
Loma, CO  81524